JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jessica Vaughn

## DEFENDANTS

Temple University

**(b)** County of Residence of First Listed Plaintiff **Kings County, NY**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Scott M. Pollins, Pollins Law, 303 W. Lancaster Ave.,
Ste. 1C, Wayne, PA 19087, 610-896-9909

Attorneys *(If Known)*

Jessica L. Meller, Esq.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Americans with Disabilities Act, Rehab Act

Brief description of cause:
Disability discrimination and retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $** *unliquidated*

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE  1/30/26

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: *Philadelphia, PA*

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?
   If yes, attach an explanation.                                                                            Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ is not related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief *see certification below*
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☒ does / ☐ does not have implications beyond the parties before the court and ☐ does / ☒ does not seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA VAUGHN | : | |
|       **Plaintiff** | : | **CIVIL ACTION NO.** |
|   v. | : | |
| TEMPLE UNIVERSITY - OF THE | : | |
| COMMONWEALTH SYSTEM OF | : | **JURY TRIAL DEMANDED** |
| HIGHER EDUCATION | : | |
|       **Defendant** | : | |

## COMPLAINT

## I.   INTRODUCTION

1. Plaintiff, Jessica Vaughn (Vaughn), is suing her former employer, Temple University – Of The Commonwealth System of Higher Education (Temple), for discriminating against her due to her disability (Long COVID) and retaliating against her for requesting reasonable accommodations due to her disability. Vaughn brings her case under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.A. § 12101 *et seq.* (ADAAA), Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Rehab Act), the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (PHRA), and the City of Philadelphia Fair Practices Ordinance § 9-1103(1) (FPO). Vaughn seeks back pay, loss of earnings capacity, compensatory damages, punitive damages (under the ADAAA and FPO only), interest, negative tax consequence damages, injunctive relief, and attorney's fees and costs.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and the ADAAA and the Rehab Act. Furthermore, Temple's conduct violated the PHRA and FOP, and the pendant jurisdiction of this Court is invoked to remedy those violations.

3. Venue is proper as Vaughn worked at Temple, which is located in the Eastern District of Pennsylvania.

4. Vaughn exhausted all remedies available to her as set forth in the ADAAA by timely filing a complaint with the EEOC. The EEOC issued Vaughn a notice of right to sue on December 17, 2025, and this Complaint is filed within 90 days of Vaughn's receipt of the December 17 notice of right to sue.

### III.    PARTIES

5. Vaughn resides in Brooklyn, New York.

6. Temple is a state-related public research university organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1801 Liacouras Walk, Philadelphia, PA 19122.

7. At all material times hereto, Temple acted through its employees, agents, representatives and/or servants who were acting within the course and scope of their employment and authority.

### IV.    FACTUAL BACKGROUND

8. Vaughn started at Temple University in the Fall of 2021 as an Associate Professor, tenure track, in the Tyler School of Art and Architecture.

9. Vaughn is an artist and teaches painting.

10. Prior to starting at Temple, Vaughn had COVID-19 in late April 2020. Since then, Vaughn suffered from post-COVID symptoms (significant fatigue, low physical stamina, brain fog, migraine, dizziness, shortness of breath, chest pains) that eventually became known and diagnosed as Long COVID.

11. As a result of her Long COVID disability, Vaughn requested certain accommodations, such as teaching classes starting no earlier than 9am and having a recovery day in between teaching days (and remote options when available).

12. In the Fall of 2021, shortly after Vaughn started at Temple, she contracted COVID-19 again.

13. Per direction from Temple's Human Resources department, Vaughn provided medical documentation of her disability to Temple prior to each semester she was at Temple.

14. In January 2022, Vaughn submitted a Request for Disability Accommodation to Temple in which she requested the following accommodations: 1) 9am or later start time and/or hybrid class for courses she was assigned; 2) rest day (a day of no scheduled classes or student meetings); and 3) ability to perform Department service requirements (when possible) around her rest/recovery day.

15. In January 2023, Vaughn submitted an ADA certification from her family medicine physician in which she requested the same accommodations she had requested in January 2022. On January 24, 2023, Temple notified Vaughn that her request for accommodation was denied.

16. About a week later and on February 2, 2023 Temple did an about face and informed Vaughn that her request for an accommodation was approved.

17. Temple approved having Vaughn's classes begin after 9:30am[1], however this accommodation was only granted for the Spring 2023 semester. Vaughn believes Temple

---

[1] What actually ending up happening is that Temple scheduled Vaughn for a class that went from 8am-10:30am. Temple allowed for Vaughn's teaching assistant to conduct the first 45 minutes of this class and then Vaughn was required to be present for the remainder of the class starting at about 8:45am.

made a mistake and Spring 2023 should have been Fall 2023 because the Spring 2023 semester had already started at that time.

18. In July 2023, Vaughn requested that Temple confirm that the February 2023 letter approving her accommodation was for the Fall 2023 semester. Temple then claimed that the February 2023 letter sent to Vaughn approved her accommodation only for the Spring 2023 semester. Vaughn informed Temple that the request for accommodation materials she had submitted in January 2023 were for the Fall 2023 semester.

19. On August 3, 2023, Vaughn submitted additional paperwork (HR form and her doctor's form) to Temple for accommodations for the Fall 2023 semester.

20. Temple requested additional medical documentation from Vaughn, however Temple did not clearly or specifically state what medical information they needed from her. Vaughn subsequently provided Temple with hundreds of pages of her medical records.

21. Temple did not respond to Vaughn's accommodation request until August 24, 2023 at which time Temple notified her that they were seeking a second opinion regarding her medical condition notwithstanding the medical documentation she had been providing Temple with for the past two years.

22. Vaughn met with Temple HR on September 12, 2023 to discuss Temple's request for a second opinion regarding her medical condition. During that meeting, Temple HR told her that the second opinion doctor's information and the appointment time would be provided to her by September 15. Temple failed to provide that information to Vaughn by then, so she emailed Temple HR on September 16 to follow up. On September 27, Temple finally provided Vaughn with the second opinion doctor's

4

contact information nearly two weeks after Temple told her they would provide that to her.

23. Several days earlier and on September 23, 2023, the Department of Art's Promotion and Tenure Review Commission (PTR) issued a Mid-Point (3rd Year) Tenure track/Re-Appointment Review. In its letter, the PTR stated as follows:

The majority of Professor Vaughn's assessments from Graduate students rank her teaching in the highest, upper level of performance. Students described Professor Vaughn as supportive, knowledgeable, accessible, and welcoming. Students appreciated the intersectional roster of contemporary artists she introduced into class discussions and the reading materials that she presented for in-class discussions. One graduate student wrote that Professor Vaughn "provided valuable feedback that validated and encouraged investigation of students' identities and areas of interest that have been historically left out of the art canon." Her one-on-one studio visits were also noted as being especially helpful. Her Painting Program colleague and committee member, Dona Nelson, shared that Professor Vaughn's suggestions to Graduate students about their work, is "targeted, defined, and focused" propelling them to move forward in their work with clarity and purpose.

There are four teaching peer reviews of Undergraduate level classes from Art Department faculty included in Professor Vaughn's portfolio. Observations were of Sophomore Painting hybrid format in November 2021, the reviewer attended an in-person class session; Intermediate Drawing in April 2022, the reviewer attended in person; Advanced Painting hybrid format November 2022 – the reviewer watched a recording of the class discussion and reviewed course materials on Canvas; and Sophomore Painting, February 2023, a hybrid format class where the reviewer watched a recording of the class discussion and reviewed course materials on Canvas.

All of the peer reviewers praise her demeanor of quiet authority in the classroom; her skill in leading discussions that connect significant art world issues with observations about individual student work; her incisive but supportive style of offering constructive critique; and her best practice approaches to teaching and learning in a studio art environment. Professor Vaughn's colleagues additionally note her skill in encouraging all members of her classes to participate in discussion by attentively drawing out quieter class members who did not immediately share their thoughts. On a less formal level, Professor Vaughn's colleague in the Painting Program noted that the undergraduate exhibitions of student work from her courses demonstrated consistently impressive results and a significant level of skill development.

The majority of Professor Vaughn's student feedback assessments from Undergraduate students rank her teaching in the medium range. Students wrote with appreciation for the variety of assignments included in her courses. Overall, the inclusive student comments indicate that additional attention to the mechanics of teaching will further strengthen Professor

Vaughn's effectiveness in the classroom. Undergraduate students cited Professor Vaughn's direct feedback on their artwork as the most beneficial part of the course experience, and several wished that more time for individual critique had been structured into class sessions. There also were several who expressed concern over the cost of required materials and wished for increased flexibility in how in-class painting was managed. The committee recommends that Professor Vaughn work with the staff at the Center for Advancement in Teaching to develop rubrics for her classes, improve the pacing of assignments, and improve student engagement during class demonstrations. Additionally, the most recent peer classroom observation from February 2023 offers a number of constructive suggestions regarding mode of delivery, sequence, tone, pacing, and requirements for course materials; the staff at the CAT will be able to support her further in this process. The committee is confident that Professor Vaughn will address these issues and will further her development as an impactful teacher adding to the contributions as an instructor that she has already made.

The PTR made the following conclusion and recommendation:

**5) Conclusion and Recommendation**

After careful consideration of Associate Professor Jessica Vaughn's dossier, the committee agrees that her creative work seriously engages issues and debates current in the field and is outstanding – bringing national and soon to be international recognition and renown to the School. The consistent attention that her creative work garners, through curated exhibitions, publications, prestigious awards, and highly visible public presentations bodes very well for her future productivity and accomplishment. Her skill in leading discussions that connect significant art world issues with observations about individual student work make her a sought after Graduate level professor and with further development of her teaching skills she will become a more influential teacher on the Undergraduate level. We look forward to her future involvement with service on the School and University level.

24. On October 3, 2023, Vaughn saw Temple's second opinion doctor.

25. Notwithstanding the PRT's positive evaluation and recommendation, on October 10, 2023, the Chair of the Department of Art (Byron Wolfe) issued a recommendation that Vaughn's contract be renewed for one year, not three years. Vaughn was expecting the Chair to recommend her contract be renewed for three years instead of only one year. Department Chair Wolfe negatively referenced Vaughn's need for disability accommodations by stating as follows:

Hopefully the adjustments Professor Vaughn makes in her courses this semester and beyond will help anticipate and minimize student concerns. The shift away from hybrid courses might also address student comments about availability and wanting more regular contact. I have worked with Professor Vaughn extensively to find a schedule that meets her requests for class times, regardless of whether accommodations have been approved or not. It is important to note that scheduling courses after 9 AM may not always be possible, and the use of a TA for portions of a class where the instructor is not present is not something that should continue.

26. On October 11, 17, 26, and 31, Vaughn emailed Temple HR to inquire about the status of Temple's second opinion doctor's report. Finally, on November 6, 2023, Vaughn learned that the second opinion doctor had sent the results of her October 3 visit to Temple during the week of October 9 and again during the week of October 30. That same day (November 6), Temple HR claimed they had just received the second opinion doctor's notes, and they had scheduled a meeting with her department.

27. On November 3, 2023, the Dean (Susan Cahan) issued a recommendation that Vaughn's contract be renewed for one year, not three years. Like the Chair, the Dean also referenced alleged concerns about her teaching. However, when Vaughn met with the Dean just a few weeks earlier in October 2023, the Dean did not raise any concerns about her teaching. She only asked Vaughn why she thought students provided inconsistent evaluations for her Spring 2023 class.

28. Because Vaughn had still not heard anything about the second opinion doctor's results, she emailed Temple HR on November 17 and 20 regarding the status of her accommodation and the second opinion doctor's results.

29. Vaughn eventually learned that the second opinion doctors agreed with her doctor's opinions regarding her medical condition. The second opinion doctor agreed with her doctors that her Long COVID affects her ability to teach, attend meetings and complete written communications. The second opinion doctor agreed that remote work should be made available to her and that a rest day is needed to assist her in recovery. The second opinion doctor believed that she could start before 9am, however he acknowledged that her Long COVID appeared to be a permanent condition.

30. Notwithstanding Temple's second opinion doctor's agreement with Vaughn's doctors regarding her medical condition and her request for accommodation (other than starting classes after 9am), on November 21, 2023, Temple informed Vaughn that they are unable to accommodate her specific request.

31. On December 21, 2023, Temple sent Vaughn a letter stating that she did not need an ADA accommodation for the Spring 2024 semester. On January 17, 2024, Vaughn emailed Temple regarding Fall 2024 accommodations (rest day between classes,

hybrid option for either instruction or meetings if/when available, and 9am or later start time). She proposed teaching three classes for the Fall 2024 and Spring 2025 semesters. She further requested a course release for the Fall 2024 for research/creative activities, and on January 23, 2024 she provided Temple with the specific exhibitions and research opportunities she planned to participate in.

32. A few weeks later and on February 6, 2024, Vaughn received an email from the Chair of the Department approving her course release request for the Fall of 2024.

33. On February 26, 2024, Temple's President informed Vaughn that she was appointed for a one-year contract for the 2024-2025 school year. Additionally, the letter included a demoted title for her position (the letter stated she was an Assistant, not Associate, Professor). After she informed Temple about this, Temple corrected their mistake and acknowledged that she was an Associate Professor.

34. On March 11, 2024, Department Chair Wolfe emailed Vaughn as follows:

**Re: Upcoming Student Critiques**

From Byron Wolfe <byron.wolfe@temple.edu>
Date Mon 3/11/2024 11:11 AM
To    Jessica A. Vaughn <jessica.vaughn@temple.edu>
Cc    Cheryl Carreno <cheryl.carreno@temple.edu>

Jessica,

I do not know the reasons or details for the change in the Margolis lecture. Until I am given specific reasons to do otherwise, I operate in good faith with everyone about scheduling, availability, requests for changes, and their willingness and ability to show up and meet their professional obligations.

There is a significant misalignment with the expectations we have for one another. I do not think it is even remotely taxing to expect you to show up to a review at 11 AM the day after teaching the evening prior. For you to suggest that it is too much for you to be present at that time is hard for me to reconcile with the level of energy and engagement that must be necessary for you to have such an active and accomplished career outside of teaching. I must ask: how are you able to get so much creative and professional work done when you're resting in between teaching days? Do you anticipate making the same request for accommodations for your upcoming Dia Art Project?

While I was deeply involved in coordinating your teaching schedule - that continues to meet your ongoing requests for accommodations - it is not among my duties to coordinate all events and obligations so that they suit your specific needs, or the needs of any other individual or group. I have the basic expectation that all faculty will be willing and available to show up to do their jobs with within a reasonable time frame during the week.

I participated in a few hybrid MFA reviews during the pandemic and they were among the thesis review experiences I've ever had. That is not a format that I am willing to suggest to either the students or the committees. It is also not something I am able to facilitate, or willing to ask of others.

If you remain certain that you will be too fatigued to participate in the two reviews under discussion at the times that are now scheduled, please contact the students and tell them in advance. If you also anticipate not being able to be present for their openings, again, you should let the students know.

I need to note that moving forward, your future teaching responsibilities are only going to increase in terms of course load, along with the expectations for serving on more graduate committees; relative to most full time Art faculty, service on four thesis committees is very low, especially in a Program in with as many grads as Painting. Is there some reason why you are on a total of four committees? I mention the future teaching load to prepare you for the fact that the finely calibrated schedule you now have will likely be impossible with your current constraints.

Byron

35. Vaughn felt like Department Chair Wolfe was questioning her commitment to her job and further questioning her need for accommodations that had been in place with Temple since 2022.

36. Throughout the above timeline, Vaughn was disabled under the ADAAA, Rehab Act, PHRA and FPO due to her Long COVID condition.

37. Additionally, Vaughn was disabled pursuant to the ADAAA, Rehab Act, PHRA and FPO because Temple regarded her as disabled, or she had a record of a disability.

38. Temple discriminated against Vaughn due to her disability (actual disability, record of disability and/or regarded as disabled) and retaliated against her for requesting reasonable accommodations by issuing her a one year instead of a three-year contract renewal.

39. Vaughn has suffered, is now suffering and will continue to suffer emotional distress, career loss, loss of earnings capacity, embarrassment, humiliation, suffering, inconvenience, mental anguish, and other nonpecuniary losses as a direct result of Temple's unlawful conduct.

40. Temple engaged in intentional discrimination against Vaughn with malice or reckless indifference to her rights.

## V.    CLAIMS

### Count I – Disability Discrimination (ADAAA, Rehab Act, PHRA and FPO)

41. Paragraphs 1-40 are incorporated by reference as if fully set forth herein.

42. The acts, failures to act, practices and policies of Temple set forth above constitute disability discrimination (actual disability, regarded as disabled, record of disability) and violate the ADAAA, Rehab Act, PHRA and FPO.

WHEREFORE, Vaughn respectfully demands judgment in her favor and against Temple for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation and embarrassment, back pay, punitive damages (under the ADAAA and FPO only), interest, negative tax consequence damages,

attorney's fees plus costs, declaratory relief that the conduct engaged in by Temple

violated Vaughn's civil rights, equitable/injunctive relief directing Temple to cease any

and all unlawful disability discrimination against their employees and such other relief as

the Court deems proper.

### COUNT II – Disability Retaliation (ADAAA, Rehab Act, PHRA and FPO)

43. Paragraphs 1-40 are incorporated by reference as if fully set forth herein.

44. The acts, failures to act, practices and policies of Temple set forth above

constitute disability retaliation in violation of the ADAAA, Rehab Act, PHRA and FPO.

WHEREFORE, Vaughn respectfully demands judgment in her favor and against

Temple for compensatory damages for emotional distress, career damage, loss of

earnings capacity, mental anguish, humiliation and embarrassment, back pay, punitive

damages (under the ADAAA and FPO only), interest, negative tax consequence damages,

attorney's fees plus costs, declaratory relief that the conduct engaged in by Temple

violated Vaughn's civil rights, equitable/injunctive relief directing Temple to cease any

and all unlawful retaliation against their employees and such other relief as the Court

deems proper.

Respectfully submitted,

By:   /s/ *Scott M. Pollins*
Scott M. Pollins - Pa. Atty. Id. No. 76334
**Pollins Law**
303 W. Lancaster Ave., Ste. 1C
Wayne, PA 19087
(610) 896-9909 (phone)/(610) 896-9910 (fax)
scott@pollinslaw.com (email)

Attorney for Plaintiff, Jessica Vaughn

Date:   1/30/26